UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| Amanda Q, <br><br> Plaintiff, <br><br> v. <br><br> Commissioner of Social Security, <br><br> Defendant. | Case No. 2:24-cv-00972-TMC <br><br> ORDER REVERSING DENIAL OF BENEFITS |

Plaintiff Amanda Q. seeks review of the denial of her application for Social Security Disability Insurance Benefits ("DIB"). Plaintiff alleges the Administrative Law Judge ("ALJ") erred by failing to properly evaluate the medical opinion evidence and Plaintiff's testimony. Plaintiff further alleges the ALJ failed to consider whether Plaintiff's schizophrenia met a listed impairment. *See generally* Dkt. 8. After reviewing the record, the Court concludes that the ALJ erred in finding that Plaintiff is not disabled. The Court accordingly REVERSES the Commissioner's final decision and REMANDS the case for further proceedings.

### I.   PROCEDURAL HISTORY

Plaintiff's DIB application under 42 U.S.C. § 423 (Title II) of the Social Security Act was denied both on initial review and on reconsideration. Dkt. 6, Administrative Record ("AR") 168–174; 176–182. Plaintiff requested a hearing on her application, which was held before ALJ Laura

**ORDER** REVERSING DENIAL OF BENEFITS - 1

Valente ("ALJ") on February 1, 2022. AR 81–84, 183–84. During that hearing, the ALJ granted Plaintiff's request to reschedule the hearing to be in-person. AR 81–84. A second hearing was held before the ALJ on December 1, 2022. AR 85–107. And a supplemental hearing was held on February 28, 2023 to complete Plaintiff's father's testimony and to take the Vocational Expert's testimony. AR 108–130.

On March 21, 2023, the ALJ issued a written decision, finding that Plaintiff was not disabled under the Social Security Act. AR 22–36. Plaintiff sought review from the Appeals Council and provided additional evidence—mental health treatment notes from Dr. Sunida Bintasan—who had evaluated Plaintiff from October 2015 to January 2021. AR 44–79, 407–08. The Appeals Council denied Plaintiff's request for review, concluding that the additional evidence did not show a reasonable probability of changing the outcome of the decision. AR 6–8. Plaintiff filed a Complaint in this Court on July 8, 2024. Dkt. 3. Defendant filed the sealed Administrative Record on September 6, 2024. Dkt. 6. Defendants responded, Dkt. 12, and Plaintiff replied, Dkt. 13. The case is ripe for consideration.

## II.    BACKGROUND

Plaintiff was born in 1995 and was 20 years old on the alleged date of disability onset of June 1, 2019.[1] AR 132. Plaintiff completed her high school education and has held short-term jobs as a cashier at various stores. AR 419–39. According to the ALJ, Plaintiff suffers from one medically determinable severe impairment: bipolar disorder, generalized anxiety disorder, and cannabis abuse. AR 25. However, the ALJ found Plaintiff was not disabled because she had the following residual functional capacity ("RFC"):

---

[1] In Plaintiff's Initial Disability Determination Transmittal dated October 2, 2020, Plaintiff's alleged date of disability onset was listed as June 1, 2016. AR 132. In the December 1, 2022 hearing before the ALJ, Plaintiff amended the alleged onset date to June 1, 2019. AR 88.

to perform a range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple routine task work, can work superficially and occasionally with the general public, can work in the same room with coworkers but there should be no coordination of workplace activity, she can adapt to simple occasional[] workplace changes, and can set simple workplace goals.

AR 27.

### III. DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1999)).

Plaintiff alleges the ALJ made three errors in denying her application: (1) the ALJ did not properly evaluate the medical opinions; (2) the ALJ did not properly assess Plaintiff's testimony; and (3) the ALJ failed to acknowledge and evaluate whether Plaintiff's schizophrenia meets or equals a listed impairment under Step 3. Dkt. 8 at 2, 15–16; Dkt. 13 at 2.

### A. Assessment of Medical Opinions

ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness, with the two most important factors being "supportability" and "consistency." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022); 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Supportability concerns how a medical source supports a medical opinion with relevant evidence, while consistency concerns how a medical opinion aligns with other evidence from medical and nonmedical sources. *Woods*, 32 F.4th at 791–92; *see also* 20 C.F.R. §§ 404.1520c(c)(1)–(c)(2); 416.920c(c)(1)–(c)(2). "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. Although ALJs "should endeavor to use these two

terms of art—'consistent' and 'supported'—with precision," such exactness is not required when the ALJ's meaning is "clear from context." *Id.* at 793 n.4. Finally, an ALJ's finding that a medical opinion lacks either consistency or supportability is enough to find an opinion unpersuasive. *See id.* at 792–94 (upholding finding that medical opinion was unpersuasive where ALJ found opinion inconsistent but supported).

Under the relevant federal regulations, mental health counselors and social workers are considered other medical sources. *See* 20 C.F.R. § 404.1513(d); *see also Kenneth C. v. Saul,* No. 19-CV-06627-JST, 2021 WL 4927413, at *12 (N.D. Cal. Mar. 15, 2021) (citing *Kelly v. Astrue*, 471 F. App'x 674, 676–677 (9th Cir. 2012)). An ALJ may disregard opinion evidence provided by these sources "if the ALJ 'gives reasons germane to each witness for doing so.'" *Kelly*, 471 F. App'x at 676.

1.   ARNP Louisa Michael

Plaintiff submitted Advanced Registered Nurse Practitioner (ARNP) Louisa Michael's medical opinions as part of the AR. *See* AR 787, 790–93, 796–99, 991–95, 1000, 1007–11, 1329–35, 1338–42, 1353–57, 1360–64. ARNP Michael treated Plaintiff at Valley Medical Center as her mental health therapist from November 2011 to December 2022. *See id.*

Plaintiff argues that the ALJ's failure to consider ARNP Michael's medical opinions constituted legal error. Dkt. 8 at 13–14. Defendant responds that Plaintiff's "claim that the ALJ should have conducted a consistency and supportability analysis on the treatment notes of [ARNP] Michael fails because her notes were not a medical opinion, which must reflect a judgment about 'what you can still do despite impairments(s), and your physical or mental restrictions.'" Dkt 12 at 15. Specifically, Defendant argues that "Plaintiff does not cite to any element of [ARNP] Michael's notes that establish workplace limitations, let alone limitations greater than those the ALJ assessed." *Id.*

**ORDER** REVERSING DENIAL OF BENEFITS - 4

This argument is unpersuasive. ARNP Michael treated Plaintiff for two years during which she wrote regular assessments tracking Plaintiff's symptoms, medications, and next steps for her treatment plan. *See* AR 787, 790–93, 796–99, 991–95, 1000, 1007–11, 1329–35, 1338–42, 1353–57, 1360–64. Each of these records points to Plaintiff's workplace limitations such as difficulties communicating with others, focusing on tasks, and maintaining organization. *See id.*

To start, ARNP Michael's November 11, 2021 progress note contained a diagnosis of "Bipolar disorder, most recent episode depressed, Generalized anxiety disorder, Cannabis use disorder." AR 1332. Around a month later, ARNP Michael's assessment stated, "Client significantly latent, reports difficulty sleeping, has apparent though[t]-blocking, appears to be experiencing a manic episode." AR 791. In an assessment dated February 16, 2022, ARNP Michael wrote, "Client appears to have some improvement as evidenced by ability to converse with me today, but continues to have severe thought blocking and latency, distractibility, tangential thought processes, and requires multiple redirections to complete interview. Unable to complete PHQ9 due to these concerns." AR 993. Plaintiff's symptoms continued, and on April 1, 2022, ARNP Michael wrote, "Client appears to still be experiencing mania as evidenced by poor sleep, lability, and per parents she is not at her baseline." AR 1009.

But on October 13, 2022, ARNP Michael noted in the assessment, "Client reports improvement in mood and sleep. Denies manic symptoms including decreased need for sleep and racing thoughts. Going to work." AR 1354. But on December 9, 2022, ARNP Michael noted, "[Client] reports also feels like she is getting angry and emotional and having outbursts. . . . Reports 'I quit my job I think.' Dreaded going to work, was crying, decided not to go." AR 1360. In that assessment, ARNP Michael "[u]pdat[ed] diagnosis to reflect Schizoaffective disorder manic type, as client has manic symptoms of worsening disorganization, decreased need for sleep, and racing thoughts." AR 1362.

**ORDER** REVERSING DENIAL OF BENEFITS - 5

The ALJ's decision does not discuss the medical evidence provided by ARNP Michael as required under 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(1)–(2), and is reversible error. *See* AR 22–36; *Garrison v. Colvin*, 759 F.3d 995, 1013–14 (9th Cir. 2014) ("The ALJ also committed a variety of errors in evaluating Anderson's opinion evidence. Most important, she did not recognize that Anderson, as a nurse practitioner, qualified as an 'other source' that can provide evidence about the severity of a claimant's impairment(s) and how it affects the claimant's ability to work.") (cleaned up); *see also Tudor v. Saul*, 484 F. Supp. 3d 717, 727 (N.D. Cal. 2020) ("[T]he ALJ was required to provide (at the very least) specific and legitimate reasons for rejecting the opinions of Dr. Sims – and, having failed to mention Dr. Sims's opinions at all, the ALJ obviously failed to meet this standard."); *Jeffrey M. H. v. Comm'r of Soc. Sec.*, No. 3:24-CV-5427-DWC, 2024 WL 4986720, at *3 (W.D. Wash. Dec. 5, 2024) (citing cases) ("For this reason, in the absence of a proper consideration of supportability and consistency, the ALJ's determination with respect to Ms. Benson's medical opinion does not remain legally valid and supported by substantial evidence. The ALJ's erroneous evaluation of those factors is therefore reversible error.").

Additionally, the ALJ's error was not harmless because ARNP Michael's opinions described symptoms of mania, thought-blocking, and distractibility, *see* AR 933, 1009, 1362, that "suggested limitations beyond those found in the RFC." *Christina L.A. v. Comm'r of Soc. Sec.*, No. 2:24-CV-701-DWC, 2024 WL 4986717, at *2 (W.D. Wash. Dec. 5, 2024) (citing *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) ("The ALJ therefore failed to provide adequate reasons for discounting ARNP Drake's opinion. This error was not harmless, as her opinion suggested limitations beyond those found in the RFC were warranted.")). The ALJ found persuasive that Plaintiff could engage in simple routine tasks for at least an eight-hour workday of a 40-hour work week "because it is supported by reference to

treatment records showing clear thoughts, compliance with medication, and improvement in mood." AR 34. However, a review of the entire record, one that includes ARNP Michael's treatment notes, would show that Plaintiff had continued difficulties focusing and exhibited mood swings, lability, racing thoughts, and other manic symptoms. AR 787, 790–93, 796–99, 991–95, 1000, 1007–11, 1329–35, 1338–42, 1353–57, 1360–64; *see Christina L.A.*, 2024 WL 4986717, at *2 (citing *Garrison*, 759 F.3d at 1017) ("Particularly with mental impairments, symptoms wax and wane, and therefore some normal findings, or the absence of abnormal findings for a short period of time, do not necessarily show a claimant is capable of full-time, regular work without substantial disturbances.").

The Court therefore finds that the ALJ harmfully erred in failing to assess ARNP Michael's medical opinion.

   2.  *Dr. Kathryn Johnson*

Dr. Kathryn Johnson completed a Psychological Diagnostic Interview on June 2, 2021, on behalf of the Division of Disability Determination Services. AR 761–66. When Dr. Johnson asked Plaintiff about perceived barriers to work, Plaintiff "cited manic episodes and difficulty controlling emotions. She finds it hard to focus at work if she is feeling very angry or sad." AR 761. Dr. Johnson wrote, "claimant has had a number of jobs at fast food restaurants and retail shops (McDonald's, Guess Jeans, Forever 21). She either quit[] if she cannot handle the job or she is fired due to not meeting her responsibilities. Most of her jobs last from a couple weeks to a month." AR 762. Dr. Johnson also noted that Plaintiff had been hospitalized three times for bipolar disorder in 2015, 2016, and 2019. *Id.*

Dr. Johnson observed that Plaintiff "exhibits mood swings and psychotic symptoms, though she does not usually remember her actions during these times." *Id.* Plaintiff and her father reported prior instances of hallucination that Plaintiff did not remember. *Id.* Dr. Johnson noted


that Plaintiff currently took her medication regularly, though her parents needed to remind her each day. *Id.* Plaintiff also explained that her mood had improved over the past month or so and cited consistent medication and supportive friends as helping her condition. AR 763. Dr. Johnson described Plaintiff as "casually dressed, and nicely groomed" and that she was "pleasant and fully cooperative" during the evaluation. *Id.* Though "[h]er judgment regarding typical social situations was not impaired based on conversation throughout the session," Dr. Johnson wrote, "[h]er judgment is clearly impaired during severe mood episodes." AR 764.

In Plaintiff's prognosis, Dr. Johnson explained, "[t]he claimant has a serious, chronic mental health condition that may be managed with ongoing treatment. She has a good support system and she is taking appropriate medication. Her symptoms will likely wax and wan[e] due to the cyclical nature of her illness." AR 765. Therefore, Dr. Johnson concluded, "[d]ue to mood instability the claimant would likely have a significant degree of difficulty tolerating the stresses inherent in most workplace settings and she would be unable to make it through a typical workweek without disruption from her psychological symptoms. Interactions with others would likely be inconsistent and impaired at times." *Id.*

The ALJ found Dr. Johnson's opinion "not very persuasive" because "the claim that the claimant would be unable to make it through a typical workweek without disruption is not supported." Specifically, the ALJ reasoned,

> [T]he mental status examination noted the claimant made errors and counted on her fingers during serial seven calculations but was otherwise benign, showing she was nicely groomed, pleasant and fully cooperative, demonstrated mood congruent affect, denied suicidal ideation, she was oriented, memory was intact, she had good fund of general knowledge, concentration was adequate for the evaluation, insight into her condition appeared fairly good, and judgement regarding typical social situations was not impaired. It is also not consistent with the claimant's testimony that she was looking for work and had secured part-time employment, that she has a boyfriend, that they go to stores and go hiking, and that her medications help with the severity of mental health symptoms.

**ORDER** REVERSING DENIAL OF BENEFITS - 8

AR 33.

The ALJ's reasoning is not supported by substantial evidence. The ALJ only cites to two pages in Dr. Johnson's report that indicate that at the time of the evaluation, Plaintiff's mental status—appearance, attitude and general behavior, mood and affect, and content of thought—were normal. AR 763–64. While it is true that medications helped manage Plaintiff's symptoms, AR 97, the same report explained that her "symptoms will likely wax and wan[e] due to the cyclical nature of her illness." AR 765. The report also pointed out that Plaintiff continued to exhibit mood swings and psychotic symptoms, and even though Plaintiff has had several jobs, they have not lasted for more than a month. AR 762.

A review of the entire record further reveals that factors the ALJ considered positive indicators also raised concerns about Plaintiff's mental health. Specifically, while the ALJ noted Plaintiff had a boyfriend she spent time with, ARNP Michael's notes explain that Plaintiff "had a toxic relationship with boyfriend" and "stopped [therapy] due to her boyfriend at the time said she should." AR 782, 783, 1130, 1334, 1340, 1356, 1363. Additionally, a progress note dated January 19, 2023 stated, "Client has had an on and off relationship with BF that has severe conflict resolution. Client's past history of BF's has been with trauma experiencing torment and/or physical or sexual mistreatment." AR 1370. Furthermore, even though the ALJ mentions numerous times that Plaintiff's symptoms have improved based on her ability to go shopping, ARNP Michael's treatment note states that Plaintiff "[s]truggles on regular basis with shopping excessively." AR 782.

Observations in the record also support Dr. Johnson's opined limitations that while Plaintiff's bipolar disorder can be managed through ongoing treatment, she will be unable to make it through a typical workweek because of her symptoms. *See* AR 1329 (Plaintiff "[w]as unable to finish sentences, would 'trail off and not be able to finish sentences.' Had inflated

**ORDER** REVERSING DENIAL OF BENEFITS - 9

sense of her physical abilities, thought she could run for miles when 'had never done that before.'"); AR 1366–67 ("Client is currently working but due to developmentally appropriate behaviors of her diagnoses is frequently terminated from work."); AR 1373 ("Anxiety up and down. CBT coping skill reviewed. Increased Behavioral activation. Decreased self-esteem.").

Although the ALJ identified benign findings in Dr. Johnson's evaluation, she failed to explain "why [she] considered the normal results more significant" than the abnormal results supporting the opinion. *Alexander M. v. Commissioner of Social Security*, No. C21-254-BAT, 2021 WL 3758145, at *3 (W.D. Wash. Aug. 25, 2021) (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). This was error. *See Richard D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-5124-DWC, 2022 WL 4354815, at *9 (W.D. Wash. Sept. 20, 2022) (an ALJ must not "cherry-pick" certain observations without considering their context) (citing *Reddick*, 157 F.3d at 722–23). The ALJ's lack of analysis of Dr. Johnson's report is all the more significant given that Plaintiff's bipolar disorder is "episodic in nature, affecting her on some days and not others." *Stephanie M. v. Saul*, No. 20-CV-01711-MMA-BGS, 2022 WL 1037112, at *19 (S.D. Cal. Apr. 6, 2022), *report and recommendation adopted sub nom. Stephanie M. v. Kijakazi*, No. 20-CV-1711-MMA (BGS), 2022 WL 1214708 (S.D. Cal. Apr. 25, 2022) (citing *Smith v. Saul*, 820 F. App'x 582, 585 (9th Cir. 2020)); *see also Garrison*, 759 F.3d at 1017 (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.")).

Accordingly, the ALJ erred by rejecting Dr. Johnson's conclusions about Plaintiff's severe limitations.

**B.      Remaining Medical Opinions and Testimony**

Plaintiff also objects to the ALJ's assessment of medical opinions from agency consultants Dr. Carol Moore and Dr. Michael Reget, as well as Plaintiff's testimony. Dkt. 8 at 15–16. Plaintiff further argues that the ALJ failed to acknowledge and evaluate whether Plaintiff's schizophrenia meets or equals a listed impairment under Step 3. *Id.* at 8–11. Finally, Plaintiff requests that the Court remand the case so that the ALJ can review Dr. Bintasan's notes that were submitted to the Appeals Court after the ALJ's decision. *Id.* at 18–19.

The Court has reviewed Plaintiff's arguments but declines to reach them as the Court has already determined that remand is necessary, and Plaintiff's RFC must be reevaluated for the reasons given above. *See* Social Security Ruling 96-8p, (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective.").

## IV.     CONCLUSION

Based on these reasons and the relevant record, the Court ORDERS that this matter be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration consistent with this order. The Clerk is directed to enter judgment for Plaintiff and close the case.

Dated this 10th day of February, 2025.

Tiffany M. Cartwright
United States District Judge